UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW LEE URSERY, #831666,

        Petitioner,

        v.

RANDALL HAAS,

        Respondent.

_____/

Case No. 16-cv-11237

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO
PROCEED ON APPEAL *IN FORMA PAUPERIS***

## I. Introduction

Michigan prisoner Andrew Lee Ursery ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of second-degree murder, MICH. COMP. LAWS § 750.317, two counts of assault with intent to murder, MICH. COMP. LAWS § 750.83, discharging a firearm in or at a building, MICH. COMP. LAWS § 750.234b, and possession of a firearm during the commission of a felony ("felony firearm"), MICH. COMP. LAWS § 750.227, following a jury trial with co-defendant Johnny Lerue Davis Jr. in the Wayne County Circuit Court. He was sentenced to 43 to 66 years 8 months imprisonment on the murder conviction, concurrent terms of 15 to 30 years imprisonment on the

assault convictions, a concurrent term of 2 to 4 years imprisonment on the firearm discharge conviction, and a consecutive term of 2 years imprisonment on the felony firearm conviction.

In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence to support his convictions and the admission of crime scene photographs which showed a deceased victim memorial. For the reasons that follow, the Court denies with prejudice the habeas petition. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II. Facts and Procedural History

Petitioner's convictions arise from a shooting that resulted in the death of one man and injuries to two other men outside of a club in Ecorse, Michigan on October 7, 2012. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This appeal arises from the death of Chanel Weddington and gunshot wounds Damond Williams and Billy Parker sustained outside of an after-hours club known as "The Place," in the city of Ecorse, during the early morning hours of October 7, 2012. Diamond Pitts brought defendants, Patrice Jackson ("Patrice"), and a man identified at trial only as "Davonte" to The Place, and parked on the grass in a field across the street from the club. Defendants went to the club because they had a "beef" with people there. According to the testimony at trial, defendants had earlier stated that they had guns, and Ursery had shown a silver gun to the group. Regardless, a security guard and the club owner's husband (Patrick Wheeler) both testified that everyone is

patted down when they enter and turned away if weapons are found.

Later, the security guard and Wheeler observed an altercation on the dance floor involving both women and men, including defendants. The security guard testified that defendants were escorted outside for five minutes, and then allowed to reenter. Wheeler also testified that, when the same men got into another argument, he closed the club and escorted patrons outside. At that time, the security guard heard people saying that the men involved in the fight were about to start shooting. Shaquetta King saw her cousin, Parker, throw a punch at Davonte, and she also saw Joseph Elias standing in the street with his shirt off and a gun in his hand. The security guard testified that he saw defendants walk across the street toward the field. King testified that Davonte also walked there.

As two patrons, Raphael Reed and Vick Bullard, were leaving and walking to their car parked on a street slightly south of the field, Reed saw Davis and Ursery standing near a white car in the field. Reed testified that, as he started to put his key in his car door, he dropped it, bent over to pick it up, and, at the same time, heard gunshots. Reed recalled that he took cover by a truck, but looked toward the field ten feet away. Reed testified that he saw Davis and Ursery, who he had known before, along with another man, shooting toward the front door of the club. Reed testified that he also saw Ursery fire toward a man running down Francis Street.

Williams testified that he was talking to Weddington outside on the sidewalk in front of the club when he was shot in the stomach. Williams did not see who shot him, but stated that the gunshots came from the field across the street from the club and he saw the flashes from the muzzles of two guns. Williams testified that he watched Weddington suffer the fatal shot to her chest while she was standing right next to him with her back toward the field.

Parker testified that patrons were exiting the club when he arrived at the scene and that he had walked to the middle of 12th Street when the shooting began. Although he ducked behind a car, he was shot in the stomach and hip. Parker testified that he saw more than one shooter, but could not identify them.

Roy Miller, a River Rouge police officer, estimated that 40 gunshots were fired. Dean Molner, a Detective Sergeant with the Michigan State Police Department and a firearms and tool marks expert, identified four different groups of casings found, and concluded that there was a possible maximum of four guns used to fire the bullets, but it was also possible that less than four weapons were used. Bullet fragments were recovered in front of The Place and in a car parked in front of the club, and bullet holes were observed in three vacant homes down the street.

*People v. Ursery*, No. 316367, 2014 WL 4495219, *1–2 (Mich. Ct. App. Sept. 11, 2014) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the claims presented on habeas review. The court denied relief on those claims and affirmed his convictions. *Id.* at *2-5. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Ursery*, 861 N.W.2d 10 (Mich. 2015).

Petitioner thereafter filed his federal habeas petition. He raises the following claims as grounds for relief:

I.    The prosecution failed to produce legally sufficient evidence to identify him as the shooter or prove his guilt beyond a reasonable doubt.

II.   He was denied a fair trial by the introduction of a photograph of a memorial established at the scene, which was more prejudicial than probative because it elicited sympathy to the decedent.

Respondent has filed an answer to the petition contending that it should be denied.

## III.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.' " *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)); *see also Bell v. Cone*,

535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.' " *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.' " *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n.7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S.

63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court

to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71–72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with

clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Lastly, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Discussion

### A. Sufficiency of the Evidence Claims

Petitioner first asserts that he is entitled to habeas relief because the prosecutor failed to present sufficient evidence that he committed the crimes and failed to present sufficient evidence to support his discharging a firearm in or at a building. Respondent contends that these claims lack merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

A federal habeas court views this standard through the framework of 28

U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review—the factfinder at trial and the state court on appellate review—as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–89.

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998) (citing *People v. Bailey*, 549 N.W.2d 325, 331 (Mich. 1996)); MICH. COMP. LAWS § 750.317. Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Id*. at 878 (citing

*People v. Aaron*, 299 N.W.2d 304, 326 (Mich. 1980)). Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm. *People v. Djordjevic*, 584 N.W.2d 610, 612 (Mich. App. 1998) (citing *Aaron*, 299 N.W.2d at 326). Malice may also be inferred from the use of a deadly weapon. *People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999).

The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder. *See Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (listing Michigan cases); *People v. Ericksen*, 195, 793 N.W.2d 120, 122 (Mich. App. 2010); MICH. COMP. LAWS § 750.83. The elements of discharging a firearm in or at a building are that the defendant: (1) discharged a firearm, (2) at a building, (3) which the defendant knew or had reason to believe was an occupied structure or a dwelling. *People v. Wilson*, 592, 585 N.W.2d 24, 26 (Mich. App. 1998); MICH. COMP. LAWS § 750.234b. The elements of felony firearm are: (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense. *People v. Akins*, 675 N.W.2d 863, 873 (Mich. App. 2003) (quoting *People v. Avant*, 597 N.W.2d 864, 869 (Mich. App. 1999)); MICH. COMP. LAWS § 750.227b.

The prosecution must prove every element of a charged offense beyond a reasonable doubt. This burden includes proving that the defendant is the person who committed the crime. *People v. Oliphant*, 250 N.W.2d 443, 449 (Mich. 1976);

*People v. Kern*, 149 N.W.2d 216, 218 (Mich. App. 1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 614 N.W.2d 78, 81 (Mich. 2000); *People v. Jolly*, 502 N.W.2d 177, 180 (Mich. 1993); *see also People v. Johnson*, 381 N.W.2d 740, 742 (Mich. App. 1985), including identity, *Kern*, 149 N.W.2d at 218, and intent or state of mind. *People v. Dumas*, 563 N.W.2d 31, 34–35 (Mich. 1997).

Applying the foregoing standards, the Michigan Court of Appeals denied relief on these claims concluding that the prosecution presented sufficient evidence to support Petitioner's convictions. *Ursery*, 2014 WL 4495219 at *2–3. The court explained in relevant part:

> Defendants first argue that the evidence was insufficient to prove that they were the perpetrators of the crimes. However, there was evidence presented that defendants went to the club because they had a "beef" with people there, that both defendants had guns earlier that morning and were involved in an altercation inside the club, and that right before the shooting, they were seen walking toward the field where the shots were fired. Moreover, they were identified by an eyewitness as the shooters. Given that Reed knew defendants before the shooting and saw them shooting from a close distance, and in viewing all of the evidence in a light most favorable to the prosecution, sufficient evidence was presented to prove that defendants were the perpetrators of the crimes for which they were convicted. *Meshell*, 265 Mich App at 619.

> Ursery also contends that there was insufficient evidence to support his conviction of discharging a firearm in or at a building because the structures that sustained bullet holes were vacant residences. Pursuant

MCL 750.234b(1) and (5)(b), to be found guilty of discharging a firearm at an occupied structure, a defendant must intentionally discharge a firearm at a facility he or she knows or has reason to believe is a facility in which one or more individuals are present. Although the term "at" is not defined in the statute, this Court may consult the dictionary definition. *People v. Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997). In using the word "at" to indicate a direction, Random House Webster's College Dictionary (1997) defines the word "at" as "toward."

Viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to find that Ursery fired a gun multiple times toward a building occupied by numerous patrons. Evidence was presented that Ursery was inside the club before the shooting occurred. As most of the patrons exited the club when it was closing, Reed testified that he saw Ursery fire a handgun from the field directly across the street from the club in the direction of the front of the club. Weddington and Williams were both standing on the sidewalk in front of the club when they were shot. The fact that bullet holes were found in other vacant homes down the street from the club does not negate the evidence that Ursery, after having been inside the club with other patrons, fired gunshots toward the club while people were exiting the building. Accordingly, sufficient evidence was presented that Ursery intentionally discharged a firearm at a structure he knew or had reason to believe was occupied by more than one person.

*Id*. at *3 (footnote omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the prosecution presented sufficient evidence to establish Petitioner's identity as one of the perpetrators of the shooting. The evidence presented at trial showed that Petitioner and his co-defendant had a dispute with people at the club, that they both had guns

earlier that day, that they were involved in an altercation inside the club, and that right before the shooting, they were seen walking toward the field where the shots were fired. Raphael Reed, an eyewitness who was familiar with Petitioner and his co-defendant, also identified them as the shooters. Viewed in a light most favorable to the prosecution, such testimony was sufficient for the jury to find beyond a reasonable doubt that Petitioner was one of the perpetrators of the shooting and that he acted with the requisite intent so as to support his second-degree murder, assault with intent to commit murder, discharge of a firearm in or at a building, and felony firearm convictions.

Second, the prosecution presented sufficient evidence to support Petitioner's discharging a firearm in or at a building conviction specifically. The trial testimony, particularly that of Raphael Reed, showed that Petitioner and his co-defendant fired gunshots toward the front door of the club as patrons were exiting the club. Additionally, two of the victims were standing outside in front of the club when they were shot. Viewed in a light favorable to the prosecution, such evidence was sufficient for the jury to find beyond a reasonable doubt that Petitioner intentionally fired a gun at a building he knew or had reason to believe was occupied so as to support his discharging a firearm in or at a building conviction.

Petitioner challenges the jury's credibility determinations and the inferences that the jury drew from the evidence presented at trial. However, it is the job of the

fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the crimes of which he was convicted. Habeas relief is not warranted on these claims.

## B. Evidentiary Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting crime scene photographs which depicted a memorial to the deceased victim of the shooting. Respondent contends that this claim is barred by procedural default, at least in part, and that it lacks merit.

It is well-settled that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the

rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the procedural default issue is intertwined with the substantive issues and the substantive issues are easier to resolve. Consequently, the interests of judicial economy are best served by addressing the merits of this claim.

Alleged trial court errors in the application of state law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69–70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519–20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim finding that the

trial court erred in admitting a close-up photograph depicting the memorial, but that such error was harmless, and that the trial court did not err in admitting other photographs of the building which were relevant to depict lighting, the physical structures at the scene, and the vantage points of the witnesses. *Ursery*, 2014 WL 4495219 at *4–5. The court explained in relevant part:

> Ursery argues that the photographs of the memorials were not relevant and both defendants argue the probative value of the photographs was substantially outweighed by their prejudicial effect.
>
> Over defendants' objections, the trial court allowed the admission of a photograph of a poster tied to the fence in front of the club that depicted signatures and messages from acquaintances of Weddington. At trial, the police officer who took the photograph testified that this specific picture was taken to identify any possible people that may need to be interviewed for the purpose of identifying the shooters. Although the poster was relevant to show the investigative tools the police may have used to find witnesses, and the prosecution emphasized that the police had a difficult time getting witnesses to cooperate, relying on Crime Stoppers and anonymous tips to track down defendants, any probative value of this photograph was minimal compared to the prejudicial effect of showing a poster that depicts messages from friends and family of the murder victim. The admission of this photograph was not substantially necessary or instructive to show material facts or conditions, such as the lighting conditions or the location where witnesses or perpetrators were situated at the time of the incident. Therefore, the trial court erred in allowing the admission of the close-up photograph of the poster memorializing Weddington.
>
> Notwithstanding the error in admitting this photograph, its admission into evidence was not outcome-determinative given the overwhelming evidence presented that defendants were the shooters. Defendants' contentions that they were denied a fair trial by the admission of this photograph fail.

The trial court did not err in allowing the admission of separate photographs of the building, which also contained items memorializing Weddington. The lighting outside of the building and the location of the fence and sidewalk in relation to the field across the street were important issues at trial. These photographs of the building were relevant to show the vantage points of the witnesses, who saw gunfire, and Reed, who identified defendants as the shooters. Again, so long as the probative value outweighs any prejudicial effect, photographs that are admissible for a proper purpose, such as to prove where the victims and shooters were located and the lighting conditions at the time of the shooting, should not be excluded even if they contain other evidence that may tend to arouse the passion of the jury. *Eddington*, 387 Mich at 562–63.

*Id.* at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1] First, to the extent that Petitioner asserts a violation of the Michigan Rules of Evidence or other state law, he fails to state a claim upon which relief may be granted. Federal habeas relief is unavailable for perceived violations of state law. *Estelle*, 502 U.S. at 72. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of

---

[1]The Court notes that it would reach the same result under a de novo standard of review.

the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Second, Petitioner fails to establish that the admission of the disputed photographs violated his due process rights and denied him a fair trial. The photographs were relevant under state law. The close-up photograph of the memorial was relevant to the police investigation of the crime and the other photographs of the building were relevant to the lighting, the structures at the crime scene, and the vantage points of the eyewitnesses. The Supreme Court has not ruled that the admission of a crime scene photograph which depicts a victim memorial violates due process. Rather, the Supreme Court has stated that just because a relevant photograph "is shocking to the sensibilities of those in the courtroom" does not alone "render its reception a violation of due process." *Lisenba v. People of the State of California*, 314 U.S. 219, 228 (1941).

Moreover, the United States Court of Appeals for the Sixth Circuit has held that a challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude. *See Cooey v. Coyle*, 289 F.3d 882, 893–94 (6th Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997)); *see also Franklin v. Bradshaw*, 695 F.3d 439, 456–57 (6th Cir. 2012) (finding that admission of 18 autopsy photographs of victims did not render state criminal trial fundamentally unfair); *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005)

(affirming district court's denial of habeas relief on claim challenging the admission of victim photographs which refuted the petitioner's account of the victim's death); *Skrzycki v. Lafler*, 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004) ("The admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial.").

Moreover, to the extent that the admission of any photographs depicting the memorial was erroneous and could implicate due process, such error was harmless beyond a reasonable doubt. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117–18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit).

In this case, while the depictions of the memorial may have garnered some sympathy for the victim, they did not have a substantial and injurious effect or influence on the jury's verdict given the significant evidence of Petitioner's guilt presented at trial. Such evidence included testimony about Petitioner's dispute with

people at the club, his actions at the club, and his possession of a firearm near the time of the shooting, as well as the eyewitness identification of Petitioner and his co-defendant as the shooters. Petitioner fails to establish that the admission of the photographs violated due process or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas

claims. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

**IT IS SO ORDERED**.

/s/Gershwin A Drain
GERSHWIN A. DRAIN
United States District Judge

Dated:   August 2, 2017